UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.A.N.O.,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br>Respondents,<br><br>Respondents. | No. 1:25-cv-01535-KES-EPG (HC)<br><br>ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>Doc. 14 |

This habeas action concerns the re-detention of petitioner R.A.N.O., a noncitizen who was detained and released in 2022 but recently re-detained.[1] This matter is before the Court on petitioner's first amended petition for writ of habeas corpus. Doc. 14. For the reasons explained below, the first amended petition for writ of habeas corpus is granted.

**I.  Background**

Petitioner is a 38-year-old asylum-seeker from Nicaragua who entered the United States in October 2022. Doc. 14-3, R.A.N.O. Decl. at ¶¶ 1–2. He crossed the southern border without

---

[1] Petitioner's motion to proceed under pseudonym was granted by separate order. Doc. 16.

1

1  inspection in Texas on October 12, 2022, and immigration authorities arrested and detained him
2  that day. *See id.*; Doc. 17-1, Martinez Decl. at ¶ 6. On October 14, 2022, immigration authorities
3  released him on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 17-1, Martinez
4  Decl. at ¶ 7; Doc. 14-3, R.A.N.O. Decl. at ¶ 5; Doc. 20-2, Ex. 2.

5  Immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for
6  'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s]
7  neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C.
8  § 1182(d)(5)(A)). "Release [therefore] reflects a determination by the government that the
9  noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d
10 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir.
11 2018).

12 Following his release, petitioner settled in California. *See* Doc. 14-3, R.A.N.O. Decl. at
13 ¶¶ 10–11. Prior to his re-detention, plaintiff lived with his partner and her sister, as well as his
14 brother and niece. *Id.* Petitioner worked pursuant to a valid work authorization, first at a
15 manufacturing company and then at a grocery store. *Id.* ¶¶ 12–13. He regularly sent money to
16 his two children in Nicaragua, and he attended church twice a week. *Id.* ¶ 14, 16. Petitioner was
17 served with a notice to appear for removal proceedings on August 17, 2023. *See* Doc. 17-2,
18 Ex. 1. He sought relief in his removal proceedings by filing an asylum application. Doc. 14-3,
19 R.A.N.O. Decl. at ¶ 17. He also maintained a clean criminal record. *Id.* ¶ 15.

20 As a condition of his release, petitioner was enrolled in the Intensive Supervision
21 Appearance Program, which required him to report in person on occasion and to complete virtual
22 check-ins via a mobile phone application. *Id.* ¶¶ 5–9; Doc. 17-1, Martinez Decl. at ¶ 8. Petitioner
23 states that he completed all his reporting requirements, but that on two occasions, he sent the
24 required photo through the mobile phone application a few hours late. Doc. 14-3, R.A.N.O. Decl.
25 at ¶¶ 10–11. He asserts that on those occasions he promptly explained to his assigned ISAP
26 officer why he had uploaded the photo late. *Id.* ¶ 9. Petitioner also states that he never received
27 any warning, notice of non-compliance, or threat of arrest for any delay in reporting. *Id.*
28 Respondents submit the declaration of a deportation officer, who indicates that on multiple

occasions, over the course of three years, petitioner completed virtual check-ins outside the designated zone or missed or was delayed in completing virtual check-ins. Doc. 17-1, Martinez Decl. at ¶ 10. The declaration does not assert that ICE notified petitioner that their system had recorded him as having missed or been delayed in a required check-in. *See id.* Nor does the declaration dispute petitioner's assertion that he promptly notified his assigned ISAP officer on the two occasions when he believed he had uploaded a photo late, or petitioner's assertion that he never received any warning or notice of alleged non-compliance prior to his re-detention. *Id.*

On October 28, 2025, petitioner was instructed by an ICE agent to report to the Stockton ICE office the following morning for an in-person check-in. Doc. 14-3, R.A.N.O. Decl. at ¶ 21. When petitioner reported as instructed, ICE agents detained him. *Id.* ¶¶ 21–27. They transported petitioner to Mesa Verde ICE Processing Center, where he remains detained. *Id.* ¶ 32.

**II.     Procedural History**

On November 10, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. Respondents filed an opposition and a motion to strike on November 17, 2025. Doc. 9. Petitioner filed a reply, then filed a first amended petition and an amended motion for temporary restraining order on November 19, 2025. Docs. 11, 13, 14. The Court issued a new briefing schedule on the amended filings and informed the parties that it intended to rule directly on the first amended petition. Doc. 15. Respondents filed an opposition, Doc. 17, and petitioner filed a reply, Doc. 18.[2]

///

///

---

[2] In their opposition, respondents requested that the Court hold the case in abeyance pending the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, No. 25-6842. The Court declines to hold this case in abeyance given the nature of the relief sought and petitioner's showing. Additionally, the Court notes that the issue raised in the district court in *Rodriguez Vazquez* appears to concern whether 8 U.S.C. § 1225(b)(2)(A) could be applied to noncitizens living in the country for many years. *See Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025). But here petitioner raises a constitutional claim based on the liberty interest that developed during his three years on release, and petitioner argues that the government may not re-detain him without a showing at a pre-deprivation hearing that he is either a flight risk or a danger to the community.

### III. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### IV. Discussion

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 3 at 12–18. In response, respondents argue that petitioner has no due process rights because he is subject to the "entry fiction" doctrine. Doc. 17 at 22–23; Doc. 9 at 7–8.

The Supreme Court has noted the distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). But those at the threshold of initial entry typically have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

The "entry fiction" extends this distinction "to some individuals within the United States

4

but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen an alien arrives at a port of entry—[such as] an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). The entry fiction limits a noncitizen in such circumstances to "only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention).

Respondents argue that *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc), *superseded by statute as stated in Xi*, 298 F.3d at 837–38, precludes petitioner's challenge to his immigration detention. In *Barrera-Echavarria*, the petitioner was a Cuban national who was detained at a port of entry. *Id.* at 1143–44. After the petitioner was ordered excluded, he was paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) as he could not be deported to Cuba, but he was subsequently re-detained after he committed various crimes while on parole. *Id.* at 1443–44. The Ninth Circuit found that the former 8 U.S.C. § 1226(e), which has since been repealed, statutorily authorized the indefinite detention of a noncitizen who had been ordered excluded but whose deportation could not be effectuated. *Id.* at 1444–48 (citing 8 U.S.C. § 1226(e) (repealed 1996)). The petitioner argued that "his detention in federal prisons almost continuously since 1985 [fell] on the punishment side of the line and violate[d] his [substantive] right to due process." *Id.* at 1448. The Court rejected that claim, finding that "[b]ecause excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Id.* at 1450.

Respondents argue that the entry fiction also applies to petitioner and that *Barrera-Echavarria* forecloses his due process claim for release from detention. But as the Ninth Circuit noted in *Xi*, "the statute interpreted in *Barrera-Echavarria* no longer exists," and subsequent amendments to the immigration laws "introduced an entire set of legal concepts purporting to

5

redefine the 'basic territorial distinction' at play in immigration law." *Xi*, 298 F.3d at 838 (quoting *Zadvydas*, 533 U.S. at 694). *Barrera-Echavarria* considered the Attorney General's statutory authority "to detain undeportable, excludable aliens." *Barrera-Echavarria*, 44 F.3d at 1444. But "'excludable' is no longer a term that has any statutory import under the INA." *Xi*, 298 F.3d at 838.³

Other district courts in this circuit that have found that a noncitizen like petitioner, who was paroled into the United States, has a due process right to challenge his re-detention without a bond hearing. *See, e.g.*, *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025*)*; *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrera-Echavarria* inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").⁴ The Court similarly finds that petitioner has a due process right to challenge his re-detention pending his removal proceedings.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures

---

³ In *Zadvydas v. Davis*, the Supreme Court, noting the "serious constitutional problem" that would be presented if a statute permitted "indefinite detention of an alien[,]" employed the constitutional avoidance canon in holding that 8 U.S.C. § 1231(a)(6) "limits an alien's post-removal-period detention" to a reasonable period and "does not permit indefinite detention." *Zadvydas v. Davis,* 533 U.S. 678, 689–90 (2001). In *Xi*, the Ninth Circuit found that this interpretation of § 1231(a)(6) also applied to inadmissible aliens. *Xi*, 298 F.3d at 836–39.

⁴ Similarly, in a due process challenge to the prolonged detention of a § 1225(b) detainee, the United States District Court for the Southern District of California rejected the argument that *Barrera-Echavarria* and the entry fiction foreclosed the petitioner's due process claim. *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 770 (S.D. Cal. 2020); *see also Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8 U.S.C. § 1225(b)).

necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### a. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).[5]

---

[5] Respondents argue that reliance on any case concerning the requirements of due process for American citizens in the criminal context is misplaced because, they argue, petitioner has no due process rights. Doc. 17 at 25–26. The Court rejects this argument, as explained above. To the extent respondents argue that reliance on *Morrissey* is misplaced simply because it arose in the criminal context rather than the immigration context, that argument is unpersuasive. Just like a parolee from a criminal conviction, noncitizens are entitled to the protections of the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). While it is true, as the government points out, that Congress may make "rules [as to noncitizens] that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), legislatures may also make rules as to convicted criminals that would be unacceptable if applied to law-abiding citizens, see *Morrissey*, 408 U.S. at 482 ("[T]he State properly subjects [parolees] to many restrictions not applicable to other citizens . . . ."). As other courts have recognized in rejecting a similar argument, "[i]f a parolee serving out a sentence for a violent crime, and subject to highly restrictive conditions of release, has a sufficiently strong liberty interest[] to be entitled to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely has a similar entitlement." *See Guillermo M. R. v. Kaiser*, No. 25-CV05436-RFL, 2025 WL 1983677, at *6 (N.D. Cal. July 17, 2025). "Given the civil context [of

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's humanitarian parole was similar. For three years, it allowed him to establish ties in the community, work pursuant to a valid work authorization, and pursue relief in his removal proceedings. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents argue that they nonetheless had discretion to re-detain petitioner under § 1225(b). *See* Doc. 17 at 10. In *Ramirez Tesara v. Wamsley*, the District Court for the Western District of Washington rejected a similar argument: the court found that the government's "argument does not explain why [immigration authorities] found Petitioner to be eligible for parole [when they released him a year earlier], but not the following year even after he had established deep ties to the community . . . and timely filed an asylum application." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025). While immigration officials may have had discretion over the initial decision to detain or release petitioner, their decision to release an individual from custody created "an implicit promise" upon which an individual may rely: that his liberty "will be revoked only if [he] fails to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts have found in similar circumstances, "even when ICE has the initial discretion to detain or release a

---

immigration detention], [petitioner's] liberty interest is arguably greater than the interest of parolees in Morrissey." *Ortega*, 415 F. Supp. 3d at 970.

1    noncitizen pending removal proceedings, after that individual is released from custody she has a

2    protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025,

3    1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always

4    constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th

5    Cir. 2017).

6    The Court finds that petitioner has a protected liberty interest in his release. *See*

7    *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the

8    liberty interest that arises upon release [from immigration detention] is *inherent* in the Due

9    Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal.

10   June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong

11   liberty interest). The Court must therefore determine what process is due before the government

12   may terminate his liberty.

13   **b. *Mathews* Factors**

14   Respondents argue that the Court should not provide petitioner with more process than

15   that provided by statute. Doc. 17 at 29–30 ("Petitioner requests that the Court fabricate an

16   affirmative right completely absent from the governing statute."). But once a constitutionally

17   protected interest is recognized, a court must determine whether the procedures followed

18   complied with due process requirements—not simply whether they complied with the statute.

19   *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985). "[O]nce it is determined that

20   the Due Process Clause applies, 'the question remains what process is due,'" and "[t]he answer to

21   that question is not to be found in the [governing] statute." *Id.* (quoting *Morrissey*, 408 U.S. at

22   481); *see also Vitek v. Jones,* 445 U.S. 480, 491 (1980) ("[M]inimum [procedural] requirements

23   [are] a matter of [constitutional] law, [and] they are not diminished by the fact that the

24   [government] may have specified its own procedures . . . . In *Morrissey, Gagnon*, and *Wolff*, the

25   States had adopted their own procedures for determining whether conditions warranting

26   revocation of parole, probation, or good-time credits had occurred; yet we held that those

27   ///

28   ///

9

procedures were constitutionally inadequate.").[6]

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required here may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[7]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for three years

---

[6] Respondents also argue that petitioner's requested remedy exceeds the permissible bounds of habeas relief, citing *Thuraissigiam* for the proposition that habeas is solely "'a means to secure *release* from unlawful detention,' not a means of 'achiev[ing] an entirely different end,' such as 'obtain[ing] additional administrative review.'" Doc. 17 at 29 (quoting *Thuraissigiam*, 591 U.S. at 107). This argument is unpersuasive. The quoted statements from *Thuraissigiam* are from a different context—the Court's consideration of whether a jurisdiction-stripping provision violated the Suspension Clause by barring the petitioner's request for a writ of habeas corpus. *See Thuraissigiam*, 591 U.S. at 115–120. That provision is not at issue in this case. As habeas relief is available "to attack future confinement and obtain future releases[,]" *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), the Court finds that "habeas relief remains available . . . to prevent a further detention without a pre-detention hearing," *Martinez Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 3443146, at *3 (C.D. Cal. Dec. 1, 2025). *Cf. Morrissey*, 408 U.S. at 484–490 (in a habeas challenge, setting out the procedures that must be followed before revoking parole).

[7] Respondents argue that the *Mathews* factors do not apply because the Supreme Court has never utilized those factors in evaluating a Due Process claim by a noncitizen. Doc. 17 at 26 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). But respondents then analyze the *Mathews* factors and do not propose an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the due process argument that petitioner makes here. *See e.g., Ramirez Clavijo v. Kaiser*, No. 25-CV06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 25-CV05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). And "*Mathews* remains a flexible test," *Rodriguez Diaz*, 53 F.4th at 1206–07, that appropriately accounts for the competing interests of an individual detainee and the government.

in reliance on the government's previous representations that he was being released pending his removal proceedings.  His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172.  While the parties dispute the extent to which petitioner missed certain virtual check-ins, the deportation officer's declaration does not dispute petitioner's assertion that he promptly notified his assigned ISAP officer on two occasions when he believed he had uploaded a photo late, or petitioner's assertion that he never received any warning or notice of alleged non-compliance prior to his re-detention.  And as the District Court for the Western District of Washington found in a similar case in which a noncitizen had missed appointments with ICE agents, it does not "necessarily follow that Petitioner can be detained for those violations without a hearing." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025).  Those considerations may well be relevant to a neutral decisionmaker's detention determination, but they do not eliminate petitioner's right to due process.  "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Id.*  As there were no procedural safeguards to determine if petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in

11

doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing.

### c. Burden of Proof

The parties dispute whether the burden of proof should fall on petitioner or the government at the bond hearing. The Court agrees with the decisions of other courts in this circuit finding that, in this context, the burden is more appropriately placed on the government. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025); *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025).[8]

### d. Pre- vs. Post-Deprivation Hearing

The Court concludes that a pre-deprivation hearing is necessary to satisfy due process. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").

Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in

---

[8] The government argues that *Zadvydas* placed the burden on the petitioner to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before making "the government respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. But the cited portion of *Zadvydas* outlined the appropriate procedure to be used at a preliminary showing on a challenge to prolonged detention, not whether the burden of proof should fall on the detainee or the government at a bond hearing to determine whether the detainee should be re-detained, as a flight risk or danger to the community based on changed conditions, after an extended period of authorized release. *See id.*

12

1   extraordinary situations where some valid governmental interest is at stake that justifies
2   postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations
3   omitted)).  While respondents allege that petitioner missed, or was delayed in complying with,
4   multiple required virtual check-ins, most recently on October 1, 2025, their declarant does not
5   dispute petitioner's assertion that ICE did not notify petitioner of such allegations before his re-
6   detention.  *See* Doc. 17-1, Martinez Decl. at ¶¶ 10–11.  And when ICE did reach out to petitioner
7   to instruct him to report in person, he did so on October 29, 2025.  The fact that petitioner
8   appeared as instructed undermines the argument that exigent circumstances warranted his
9   immediate arrest as a flight risk, without any pre-deprivation process.  The Court concludes that a
10  pre-deprivation hearing is necessary to satisfy due process.

**V.  Conclusion and Order**

The first amended petition for writ of habeas corpus, Doc. 14, is GRANTED.

Respondents are ORDERED to release petitioner immediately.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   January 6, 2026

UNITED STATES DISTRICT JUDGE